

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 9 2009

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | No. 4-09CR-172-A |
| | § | |
| NGOZI NNAJI (1) | § | |
| EMMANUEL NNAJI (2) | § | |

## INDICTMENT

The Grand Jury Charges:

### Count One
### Forced Labor Conspiracy
### (Violation of 18 U.S.C. §§ 371 and 1589)

1. Between, in or about mid 1997 and continuing through in or about February 2006, all dates being approximate and inclusive, in the Northern District of Texas and elsewhere, defendants **Ngozi Nnaji** and **Emmanuel Nnaji** did knowingly and willfully combine, confederate, conspire and agree with each other and others known and unknown to the grand jury to commit offenses against the United States set forth in 18 U.S.C. § 1589, specifically;

(a). to provide and obtain the labor and services of "C.N.," a Nigerian woman identified herein by her initials, whose identity is known to the grand jury, by threats of serious harm to "C.N." and

(b). by means of a scheme, plan, and pattern intended to cause "C.N." to

believe that, if she did not perform such labor and services, she would suffer serious harm.

## Manner and Means of the Conspiracy

2. It was part of the conspiracy that the defendants, together with others known and unknown to the grand jury, targeted and recruited "C.N." to come to the United States as their domestic servant knowing that she was desperately poor and needing employment.

3. It was part of the conspiracy that the defendants, together with others known and unknown to the grand jury, brought "C.N." to the United States to provide child care and perform other domestic services for defendants **Ngozi Nnaji** and **Emmanuel Nnaji**, who, at all times during the conspiracy were husband and wife.

4. It was part of the conspiracy that the defendants and others known and unknown to the grand jury, enticed "C.N.," an impoverished widow with six young children, to come to the United States, promising her a salary, free room and board, and to support and care for her children in Nigeria, in exchange for "C.N.'s" caring for the defendants' child in the United States.

5. It was part of the conspiracy that the defendants secured "C.N.'s" continued labor and services in part by falsely representing to her that her salary was being sent to her six children in Nigeria, when in fact, over the nine years "C.N." was in the defendants' service her children received only a few hundred American dollars.

INDICTMENT - Page 2

6. It was part of the conspiracy that the defendants knew that "C.N." had a young daughter in Nigeria, who was diagnosed with sickle cell anemia and needed ongoing doctor's care and medication, and that "C.N." relied on defendants' representations that her salary was sent to her children for their support and to provide for her daughter's necessary medical care, without which her daughter's health and life were jeopardized.

7. It was part of the conspiracy that others known and unknown to the grand jury, to facilitate the defendants' recruitment of "C.N.," procured fraudulent documents in Nigeria for "C.N." without "C.N.'s" knowledge or consent, knowing that "C.N." could not read or write in English, including a Nigerian passport and United States visa displaying "C.N.'s" photograph, but not her lawful name.

8. It was part of the conspiracy that "C.N.'s" passport was confiscated by the defendants upon her arrival in the United States, kept in their possession thereafter, and never returned.

9. It was part of the conspiracy that the defendants isolated "C.N." from society by denying her requests to attend church, have friends, go to the grocery store or out in public unmonitored, or converse with the defendants' friends when they visited the house.

10. It was part of the conspiracy that the defendants secured "C.N.'s" labor and services in part by limiting her phone contact with her family in Nigeria and monitoring

her calls so that she could not freely discuss her circumstances.

11. It was part of the conspiracy that the defendants told "C.N." when she first arrived that she could not take the baby out in the neighborhood or the baby could be abducted to cause "C.N." to be fearful outside the confines of their residence and yard.

12. It was part of the conspiracy that defendant **Emmanuel Nnaji** sexually assaulted, taunted, and stalked "C.N." and the defendants used this power to intimidate "C.N." to compel "C.N.'s" labor and services.

13. It was part of the conspiracy that defendants required "C.N." to work seven days a week, approximately 16 or more hours a day for about nine years, causing her to be constantly physically exhausted.

14. It was part of the conspiracy that the defendants engaged in demeaning and humiliating behavior towards "C.N." to overcome her will and compel "C.N.'s" labor and services.

## Overt Acts of the Conspiracy

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, at least one of the defendants committed or caused to be committed at least one of the following overt acts, among others, in the Northern District of Texas, and elsewhere:

15. In or about 1997, defendant **Emmanuel Nnaji**, after meeting "C.N." in her home village in Nigeria, recruited "C.N." through defendant **Ngozi Nnaji's** brother, who had previously employed "C.N." as a babysitter in Nigeria, to come to the United States

to be a nanny for the defendants with promises of a salary and support and care for "C.N.'s" children in Nigeria.

16. In or about November and December 1997, defendant **Ngozi Nnaji's** brother in Nigeria, at the request of defendants **Ngozi** and **Emmanuel Nnaji**, procured a fraudulent passport and visa for "C.N."

17. In or about November and December 1997, defendant **Ngozi Nnaji's** brother in Nigeria personally took "C.N." to the U.S. Embassy in Lagos, Nigeria, for her visa interview and instructed "C.N." not to talk.

18. On or about December 10, 1997, defendant **Ngozi Nnaji's** brother drove "C.N." to the airport in Nigeria, handed "C.N." an envelope that he stated contained her travel documents, and instructed "C.N." not to open the envelope or look at them.

19. On or about December 11, 1997, defendants **Emmanuel Nnaji** and **Ngozi Nnaji** met "C.N." at the Dallas airport then drove "C.N." to their apartment in Irving, Texas.

20. On or about December 11, 1997, upon arrival at the defendants residence, defendant **Emmanuel Nnaji** confiscated "C.N.'s" passport and visa.

21. In or about early 1998, defendant **Emmanuel Nnaji** raped "C.N."

22. On multiple occasions between in or about 1998 through February 2006, defendant **Emmanuel Nnaji** grabbed and fondled "C.N." without her consent and threatened to have sex with "C.N." if he caught her.

23. In or about November 2000, defendant **Emmanuel Nnaji**, took "C.N." with him to a farm to buy a goat to celebrate the birth of his son, and on route the defendant drove to a wooded area and attempted to rape "C.N.," who became upset, vomited, and consequently was not raped.

24. In or about 1998, the defendants instructed "C.N." to wash all the dishes by hand and not use the dishwasher; and to sweep the carpet with a broom, not use the vacuum cleaner; to launder their clothes, and to prepare all their meals.

25. In or about 2003, defendant **Emmanuel Nnaji** raped and forced "C.N." to perform oral sex on him and told her not to tell anyone or she would get in trouble.

26. In or about 2000, approximately two years after defendants moved to their residence at 1510 Greenhill Drive, Arlington, Texas, "C.N." told defendant **Emmanuel Nnaji** that she wanted to go back to Nigeria and he responded that she would not be going anywhere. Defendant **Emmanuel Nnaji** also told "C.N." that she would be "dead" if she went back to Nigeria because nobody could help her and she would have no money to survive.

27. On multiple occasions between December 1997 and February 2006, defendant **Ngozi Nnaji** told "C.N." not to speak to anyone who visited their residence, only to say "hello" and "goodbye."

28. Between December 1997 and February 2006, the defendants periodically told "C.N." never to discuss her pay, or lack thereof, with anyone.

29. Between December 1997 and February 2006, the defendants told "C.N." she was not allowed to go out unescorted or to have friends, and they did not have time to take her to church.

30. Between December 1997 and February 2006, defendant **Ngozi Nnaji** insulted "C.N." and required her to work seven days a week, 16 hours a day, and care for the young children day and night.

In violation of 18 U.S.C. § 371.

Count Two
Forced Labor and Attempted Force Labor
Aiding and Abetting
(Violation of 18 U.S.C. §§ 1589, 1594, and 2)

Beginning on or about October 28, 2000, and continuing through in or about February, 2006, all dates being approximate and inclusive, in the Northern District of Texas, and elsewhere, defendants **Ngozi Nnaji** and **Emmanuel Nnaji**, aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of a Nigerian national, identified by her initials "C.N.," whose identity is known to the Grand Jury, by threats of serious harm to "C.N." and by means of a scheme, plan, and pattern intended to cause "C.N." to believe that, if she did not perform such labor and services, she would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

In violation of 18 U.S.C. §§ 1589, 1594, and 2.

<u>Count Three</u>
Harboring Domestic Worker for Financial Gain
(Violation of 8 U.S.C. §§ 1324 (a)(1)(A)(iii) and 1324(a)(1)(B)(i))

Between on or about December 11, 1997, and continuing through February 2006, in the Northern District of Texas and elsewhere, defendants **Ngozi Nnaji** and **Emmanuel Nnaji**, knowing and in reckless disregard of the fact that "C.N.," an alien, came to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield "C.N." from detection in their residence and elsewhere for the purpose of private financial gain.

In violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).

**INDICTMENT - Page 9**

Count Four
Conspiracy to Harbor For Financial Gain
(Violations of 8 U.S.C. § 1324 (a)(1)(A)(v)(I) and 1324 (a)(1)(B)(i))

1. Beginning on or about December 11, 1997, and continuing through in or about February 2006, in the Northern District of Texas and elsewhere, defendants **Ngozi Nnaji** and **Emmanuel Nnaji** knowingly and willfully did combine, conspire, and agree together and with others known and unknown to the grand jury, knowing and in reckless disregard of the fact that "C.N.," an alien, came to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield "C.N." from detection for the purpose of private financial gain.

2. As part of the conspiracy:

   a. The defendants employed a female Nigerian national "C.N." as a domestic worker between December 11, 1997 and February 24, 2006. "C.N." was responsible for caring for the **Nnaji** children, cleaning the home, and preparing the family meals.

   b. The Nigerian national known as "C.N." lived and worked in the defendants' residence.

   c. The defendants promised "C.N." that they would send money to her children in Nigeria.

   d. The defendants paid "C.N." a few hundred American dollars for nine years' labor and services, seven days per week, approximately sixteen hours per day.

In violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i).

<u>Count Five</u>
Document Servitude
Aiding and Abetting
(Violation of 18 U.S.C. §§ 1589, 1592, and 2)

Between on or about October 28, 2000, and through February 2006, in the Northern District of Texas and elsewhere, defendants **Ngozi Nnaji** and **Emmanuel Nnaji**, aiding and abetting one another, attempted to and did knowingly conceal, remove, confiscate, and possess the actual and purported passport and immigration documents of an individual known as "C.N.," a Nigerian national whose identity is known to the Grand Jury, in the course of a violation of Title 18, United States Code, Section 1589; with the intent to violate Title 18, United States Code, Section 1589; and to prevent or restrict or attempt to prevent or restrict, without lawful authority, "C.N.'s" liberty to move or travel, in order to maintain the labor and services of "C.N." when "C.N." was a victim of a severe form of trafficking in persons.

In violation of 18 U.S.C. §§ 1589, 1592, and 2.

<u>Count Six</u>
False Statements to Federal Agents
(Violation of 18 U.S.C. § 1001(a)(2))

On or about April 16, 2007, in the Northern District of Texas and elsewhere, defendant **Ngozi Nnaji** did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, when the defendant stated to Federal Bureau of Investigation agents the following: that in May 1999, "C.N." (whom defendant **Ngozi Nnaji** identified by name) surprised **Ngozi** by showing up at her house; that and at no time did "C.N." work as an employee for the **Nnajis**; and that "C.N." was not required to do any type of work around the house, when in fact, as the defendant well knew, "C.N." did not surprise **Ngozi** by showing up at her house but rather was brought to the United States by the **Nnajis** in 1997 to perform child care as an employee; and that "C.N." was required to work for the **Nnajis'** full time as their domestic servant and employee.

In violation of 18 U.S.C. § 1001(a)(2).

<u>Count Seven</u>
False Statements to a Federal Agent
(Violation of 18 U.S.C. § 1001(a)(2))

On or about December 4, 2006, in the Northern District of Texas and elsewhere, defendant **Emmanuel Nnaji** did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, when the defendant stated to Federal Bureau of Investigation agents the following: that "C.N." (whom defendant **Emmanuel Nnaji** identified by name) came to stay with the **Nnajis** in or about May 1999, for two months at the request of "C.N.'s" relative; that **Emmanuel Nnaji** never saw "C.N.'s" passport or personal documents; and that "C.N." cared for the **Nnajis'** child in exchange for room and board, when in fact, as the defendant well knew, "C.N." did not come to stay with the **Nnajis** in or about May 1999, for two months at the request of "C.N.'s" relative, but rather **Emmanuel Nnaji** recruited "C.N." through **Ngozi's** Nigerian relative and "C.N." came on or about December 11, 1997; that **Emmanuel Nnaji** did see "C.N.'s" passport and personal documents when he confiscated and kept them; and that "C.N." cared for not one **Nnaji** child, but three children; and "C.N." cooked, cleaned, and laundered the clothes; and that "C.N." did not agree to work in exchange for only room and board but rather was promised a $100.00 (USD) per month salary.

In violation of 18 U.S.C. § 1001(a)(2).

## FORFEITURE NOTICE

Any property real or personal that was used to facilitate, or was intended to be used to facilitate the commission of the violations set forth in Counts Three and Four, shall be subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 982(a)(6). The property subject to forfeiture includes the following: the personal residence of **Ngozi** and **Emmanuel Nnaji** located at 1510 Greenhill Drive, Arlington, Texas.

A TRUE BILL

_____
FOREPERSON

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

_____
SUSAN L. FRENCH
Trial Attorney, Criminal Section
United States Department of Justice
Civil Rights Division
Human Trafficking Prosecution Unit
Virginia State Bar No. 14141
601 D Street, Room 5132
Washington, D.C. 20530
Telephone: 202-514-3204
Facsimile: 202-514-6588

INDICTMENT - Page 14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

VS.

NGOZI NNAJI (1)
EMMANUEL NNAJI (2)

INDICTMENT

Count One
Forced Labor Conspiracy
(18 U.S.C. §§371 and 1589)

Count Two
Forced Labor and Attempted Force Labor
Aiding and Abetting
(18 U.S.C. §§ 1589, 1594 and 2)

Count Three
Harboring Domestic Worker for Financial Gain
(8 U.S.C. §§ 1324 (a)(1)(A)(iii) and 1324 (a)(1)(B)(i))

Count Four
Conspiracy to Harbor for Financial Gain
(8 U.S.C. § 1324 (a)(1)(A)(v)(I) and 1324 (a)(1)(B)(i))

Count Five
Document Servitude
Aiding and Abetting
(18 U.S.C. §§ 1589, 1592, and 2)

Count Six
False Statements to Federal Agents
(18 U.S.C. § 1001 (a)(2))

<u>Count Seven</u>
False Statements to Federal Agents
(18 U.S.C. § 1001(a)(2))

(7 COUNTS)

---

A true bill rendered,

FORT WORTH _____  _____/FOREPERSON

Filed in open court this 9th day of December, A.D. 2009.

---

BOND _____

UNITED STATES ~~MAGISTRATE~~ JUDGE   _Terry R. Means_____

Magistrate Complaint: 4:09-MJ-244

# ORIGINAL

*Criminal Case Cover Sheet*

**RECEIVED DEC -9 2009**
**445**
**CLERK U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

1. **Defendant Information**

   Juvenile:  ☐ Yes  ☒ No

   Sealed:  ☐ Yes  ☒ No

   **Related Case Information**
   Superseding Indictment: ☐ Yes ☒ No
   New Defendant: ☒ Yes ☐ No
   Pending CR Case in NDTX: ☐ Yes ☒ No
   Search Warrant Case Number: _____
   Rule 20 from District of: _____
   Magistrate Case Number: 4:09-244-MJ

   **4-09CR-172-A**

   Defendant Name
   **NGOZI NNAJI (1)**

   Alias Name
   Address

2. **U.S. Attorney Information**
   AUSA   John Bradford                                   Bar # 02818300

3. **Interpreter**

   ☐ Yes  ☒ No
   If Yes, list language and/or dialect: _____

4. **Location Status**

   Arrest Date: 9/30/2009

   Federal Inmate
   ☐ Already in State Custody
   ☐ On Pretrial Release
   ☐ Warrant to Issue
   ☒ Bond

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant: 7     ☐ Petty     ☐ Misdemeanor     ☒ Felony

   | Citation | Description of Offense Charged | Count(s) |
   |---|---|---|
   | 18 U.S. C. §§ 371 and 1589 | Forced Labor Conspiracy | 1 |
   | 18 U.S.C. §§ 1589, 1594, and 2 | Forced Labor and Attempted Force Labor Aiding and Abetting | 2 |

Indictment - Page 5

| | | |
|---|---|---|
| 8 U.S.C. §§ 1324 (a)(1)(A)(iii) And 1324 (a)(1)(B)(I) | Harboring Domestic Worker for Financial Gain | 3 |
| 8 U.S.C.§§ 1324 (a) (1)(A)(V)(1) and 1324 (a)(1)(B)(I) | Conspiracy to Harbor for Financial Gain | 4 |
| 18 U.S.C. §§ 1589, 1592, and 2 | Document Servitude Aiding and Abetting | 5 |
| 18 U.S.C. § 1001(a)(2) | False Statements to Federal Agents | 6, 7 |

Date  12/08/09                Signature of AUSA: _____
                                                SUSAN L. FRENCH, DOJ

**Indictment - Page 6**

*Criminal Case Cover Sheet* **ORIGINAL**

RECEIVED DEC - 9 2009
CLERK U.S DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**Related Case Information**
Superseding Indictment: ☐ Yes ☒ No
New Defendant: ☒ Yes ☐ No
Pending CR Case in NDTX: ☐ Yes ☒ No
Search Warrant Case Number: _____
Rule 20 from District of: _____
Magistrate Case Number: 4:09-244-MJ

**4-09CR-172-A**

1. **Defendant Information**
   Juvenile: ☐ Yes ☒ No
   
   Sealed: ☐ Yes ☒ No
   
   Defendant Name
   **EMMANUEL NNAJI (2)**
   
   Alias Name
   Address

2. **U.S. Attorney Information**
   AUSA   John Bradford              Bar # 02818300

3. **Interpreter**
   ☐ Yes ☒ No
   If Yes, list language and/or dialect: _____

4. **Location Status**
   Arrest Date: 9/30/2009
   
   Federal Inmate
   ☐ Already in State Custody
   ☐ On Pretrial Release
   ☐ Warrant to Issue
   ☒ Bond

5. **U.S.C. Citations**
   Total # of Counts as to This Defendant: 7     ☐ Petty   ☐ Misdemeanor   ☒ Felony

   | Citation | Description of Offense Charged | Count(s) |
   |---|---|---|
   | 18 U.S.C. §§ 371 and 1589 | Forced Labor Conspiracy | 1 |
   | 18 U.S.C. §§ 1589, 1594, and 2 | Forced Labor and Attempted Force Labor Aiding and Abetting | 2 |

Indictment - Page 7

| | | |
|---|---|---|
| 8 U.S.C. §§ 1324 (a)(1)(A)(iii) And 1324 (a)(1)(B)(I) | Harboring Domestic Worker for Financial Gain | 3 |
| 8 U.S.C.§§ 1324 (a) (1)(A)(V)(1) and 1324 (a)(1)(B)(I) | Conspiracy to Harbor for Financial Gain | 4 |
| 18 U.S.C. §§ 1589, 1592, and 2 | Document Servitude Aiding and Abetting | 5 |
| 18 U.S.C. § 1001(a)(2) | False Statements to Federal Agents | 6, 7 |

Date 12/06/09            Signature of AUSA: _____

                                         SUSAN L. FRENCH, DOJ

**Indictment - Page 8**